**MARION A. SELTZER**
**1725 YORK AVENUE - SUITE 16B**
**NEW YORK, NEW YORK 10128**

**Telephone: (212) 289-8798**                                          Fax: (212) 410-9443
**E-Mail: sammyjacob@aol.com**

October 30, 2010

Hon. Brian M. Cogan
United States District Judge
225 Cadman Plaza East
Brooklyn, New York, 11201

Re:     USA v Christopher Curanovic, 08 CR 240 (BMC)

Dear Judge Cogan,

      I write this sentencing memorandum to memorialize  objections to the pre-sentence report and to the sentencing guideline calculations, and to request for the reasons argued below, that the court exercise leniency in sentencing Christopher Curanovic.

Sentencing Guideline Calculations:

      The Pre-Sentence Investigation Report (hereafter "PSR") correctly divides the Counts and Racketeering Acts of Conviction into three categories:

      (1) Count One:   Racketeering Acts 5A,  5B, and Count 8 - (The Burbank, California Robbery Conspiracy,

      (2) Count One:   Racketeering Acts 8A, 8B, 8C, 8D, and Counts 11 - 14 ( the Vinny Michaels Extortion), and

1

(3) Count One:   Racketeering Acts 9A, 9B, 9C, 9D, and Counts 15 and 16 (The Rue B Extortion).

The PSR correctly computes the Base Offense Levels in #s 2 and 3 above as each being Level 20.  However, in Paragraph 74 the PSR incorrectly computes the Base Offense Level for #1 - the Burbank California Robbery Conspiracy with Orlando Spado and Beznick Neza.

Racketeering Acts 5A - 5B, and Count 8 charge a Robbery Conspiracy under Federal and State law.  The Base Offense Level under § 2B3.1 is **Level 20.**  There should be no enhancements.  The testimony at trial revealed that neither Dahomey Smith or her niece who was present at the house sustained any injury.  One of the women tripped on a rug, but the ladies were not injured and in fact chased the perpetrators out of the house and down the street.  Furthermore, Beznick Neza the co-conspirator testified that there was never an intent to harm anyone.  Finally, a 4-point enhancement pursuant to § 2B3.1 (b)(7) (E) and 2X1.1(a) "because the defendant intended to steal $1,000,000 is unsupported by the evidence.

At the sentencing of Orlando Spado on September 7, 2010, the court and the government agreed that there was insufficient evidence to prove by a preponderance of the evidence that there was a million dollars involved (9/7/10 transcript at page 7 lines 18-24, p 1- lines 9-12) in the robbery.  The court and the government also agreed that the victim did not suffer any injuries and that the victim was not physically restrained (9/7/10 transcript page 11 lines 11 thru p. 12 l. 12, and page 12 line 16 - p. 13 line 5).

Because of the findings in the Spado case,  I have not referenced citations on these issues to the trial transcript.  If the court or the government should change position on these enhancements, I am prepared to provide references from the testimony.

As the Base Offense Level of all 3 groupings is Level 20 there is no adjustment under § 3D1.4 and the Total Offense Level is Level 20 or 33-41 months.

Count 9 - Using and Carrying a Firearm During a Crime of Violence

Paragraph 66 of the PSR incorrectly states that Mr. Curanovic was convicted of brandishing a firearm in relation to Count 8. In fact, the jury found the opposite. Mr. Curanovic was found guilty of possession of the firearm, but not of brandishing. (Trial transcript 7/7/10, page 2238, lines 9 -11). For this reason pursuant to 18 U.S.C. § 924 ( c) (1) (I), the appropriate sentence is "a term of imprisonment of not less than 5 years".

SENTENCING FACTORS - USC § 3553(a)

Pursuant to the post-*Booker* [1] decision of the United States Supreme Court in *Kimbrough v. United States,* 128 S CT. 558, 570 (2007), and the Second Circuit decision in *United States v. Crosby,* 397 F.3d 103 (2d. Cir. 2005), the district court's mandate is to impose a sentence sufficient, but not greater than necessary to comply with the purposes of 18 U.S.C. §3553(a). The sentence to be imposed should be reached through consideration of all of the factors identified in §3553(a), including the advisory Sentencing Guidelines established by the United States Sentencing Commission (the "Guidelines"). Thus, the sentence to be imposed on Christopher Curanovic should be the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[1] 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed.2d 621 (2005 )

(2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    ©) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-- (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

    A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See *Crosby*, 397 F.3d at 114-15. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," *Kimbrough v. United States,* supra, (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in 3553(a), for the reasons argued, below a sentence of five years would be appropriate.

**Nature and circumstances of the offense and the history and characteristics of the defendant**:

Although RICO and the other felonies in this case are serious crimes, Mr. Curanovic's involvement in criminal activity occurred during a limited period of time. He is not a member of organized crime but became involved with Sonny Franzese and others during a time when he was vulnerable, malleable, and undergoing personal psychological issues. What is remarkable about Chris Curanovic, is that he is 29 years old and this is his first arrest and first conviction. His parents divorced when he was eleven and his mother abandoned the family. Curanovic's father was a violent alcoholic. He raised Chris and his brother Nicholas in a low-income environment, never ceasing a barrage of physical, emotional and verbal abuse. Curanovic's father died in 2007. This coincides with his relationship with, and the influence of, Sonny Franzese a legendary mobster who became a father figure to my client and a co-defendant in this case.

In fact, what is remarkable about Curanovic's background, is that he left home at age 17, went to Fordham University, supported himself through school, and graduated with a BA degree in 2004. He supported his brother Nicholas through college and afterwards when he was admitted to NYU Law School. The greatest tragedy in Curanovic's life is not the death of his father or the abandonment of his mother, but was in 2001, when in his presence his brother Nicholas at age 23 was murdered by a neighbor after a verbal argument in the parking garage of his house.

Chris Curanovic has shown that he is capable of living a law-abiding productive life. He also concedes that he has anger management problems, often fueled by excess use of alcohol. He has been in custody at the Metropolitan Detention Center for over 32 months and has no disciplinary infractions. He lost all his money and all his investments.

There is no reason to believe that after serving time in jail for the crimes for which he is

convicted, he will have any future involvement with the criminal justice system. Thus, a sentence of five years will afford adequate deterrence to criminal conduct, protect the public from further crimes, and provide Mr. Curanovic with whatever educational or vocational training, medical care, or other correctional treatment is available in the most effective manner.

**Aberrant Behavior:**

In Title 28 USC. §994 (j) Congress in passing the Sentencing Reform Act directed the Sentencing Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense.

In 2000, the Commission adopted a departure based on aberrant behavior. U.S.S.G. 5K2.20. This section, which is a policy statement provides that

> IN GENERAL -    ....... a downward departure may be warranted in an exceptional case if (1) the defendant's criminal conduct meets the requirements of subsection (b) and (2) the departure is not prohibited under subsection (3).

While the facts of this case and Mr. Curanovic's background do not make this policy statement applicable, the spirit of the statement, and Congress' intentions, might be considered in this post- *Booker* era. This case involves a multi-year period of Mr. Curanovic's life. The reasons for Curanovic's entry into criminal activity can be gleaned from his background, his anger management issues, and the events of his life. But this period of criminal activity is aberrant to the years that preceded it. There were no juvenile convictions or arrests. There is no criminal record during the period that Curanovic attended college in the Bronx. Whatever the trigger was that caused this aberrant life-style, there is no reason to believe that it will be a life-long life style, and I

6

urge the court to consider the timing of my client's criminal behavior as aberrant to what he was and what he can become.

> **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**:

Christopher Curanovic and his co-defendant Orlando Spado had different roles in the California robbery scheme. Spado was the "leader" and because of that role was given extra sentencing guideline points.  Spado intended to go to trial but was severed by the court on the eve of trial.  After Curanovic's conviction, the government made Spado an offer he couldn't refuse, and thus Orlando Spado who was allegedly a lifelong drug dealer, who provided the gun that was used in the California robbery, and who was the person who planned and set up the robbery, escaped conviction for being a dedicated drug dealer.

**Conclusion:**

Nothing requires the court to impose a mandatory consecutive sentence for the full number of guideline months provided for the extortion, gun, and robbery counts.  As the court suggested when Mr. Spado was sentenced

> " it's not like the [robbery and gun counts] were two unrelated crimes.  Because one carries a five-year minimum, I don't see the need to impose a lengthy predicate sentence for conspiring to commit the crime [which was] effectively the way the crime was committed itself."

The court might also consider that sometimes appearances belie the truth.  Mr. Curanovic is a heavy-set and burly, young man.  He fits a certain image and it was probably because of his physical appearance that he was used by Sonny Franzese and others to perpetrate their crimes. Whatever sentence the court imposes,  Mr. Curanovic has learned his lesson and when his time in custody finally ends he will lead a law-abiding life.

While it is not mentioned in the PSR, Mr. Curanovic has a pending case in New Jersey for money laundering. In his original plea offer in this district, Mr. Curanovic would have been permitted to transfer his New Jersey case to the EDNY and be sentenced on both matters together. In part, because of his relationship with Sonny Franzese and his lack of familiarity with the system, my client did not accept that offer. The government has now taken the position that they will not agree to a Rule 20 transfer of the New Jersey case. After Mr. Curanovic finishes whatever sentence Your Honor imposes, he will be faced with a sentence that will run consecutively to the EDNY sentence. In considering all the circumstances and §3553(a) factors, it is appropriate for you to also consider the New Jersey case.

Letters from my client and others will be sent under separate cover. They show not only that Mr. Curanovic is repentant and contrite, but if the court considers all the §3553(a) sentencing factors, that Mr. Curanovic deserves some understanding and compassion from the court and the community. The Probation Department realized this when they stated in paragraph 154 of the PSR

> "the defendant has had an extraordinary difficult childhood....this lifetime of significantly traumatic events and circumstances have undoubtedly played a role in shaping the defendant's character, and are mitigating factors which the court might consider at sentencing."

Thank you for your consideration.

                                        Respectfully yours,

                                        *Marion Seltzer*

Copies: AUSAs Rachel Nash and Christina Posa by ECF and e-mail