UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                                        08 Cr. 240 (S-6)(BMC)

THOMAS GIOELI and
DINO SARACINO,

                 Defendants.
------------------------------------------------------x

**Memorandum of Law in Opposition to the Government's
Motion in Limine to Admit Certain Evidence at Trial**

PRELIMINARY STATEMENT

The Government seeks to introduce certain consensual recordings in which Vincent Manzo ("Manzo" herein), an alleged soldier in the Colombo crime family, discusses his involvement in the alleged May 26, 1999 murder of William Cutolo with the Government's cooperating witness ("CW" herein), as well as testimony about those statements. In an effort to usurp the defense's ability to cross-examine Manzo regarding those statements, the Government argues that the statements should be admitted as statements against penal interest under Federal Rule of Evidence 804(b)(3) and/or statements in furtherance of the charged conspiracy under Federal Rule of Evidence 801(d)(2)(E). As set forth more fully below, Manzo's statements do not qualify for admission under either Rule. Additionally, Manzo's out-of-court statements are demonstrably unreliable and as such, their probative value is substantially outweighed by the danger of unfair prejudice to Dino Saracino ("Saracino").

1

ARGUMENT

I

<u>The Consensual Recordings and Testimony Should Not Be Admitted As Statements Against Penal Interest Because the Government Has Failed to Demonstrate That Vincent Manzo is Unavailable As a Witness.</u>

In order for Manzo's statements to be admissible under Fed.R.Evid. 804(b)(3), the Government must show first and foremost that Manzo is unavailable as a witness at trial under one of the definitions of unavailability set forth in Fed.R.Evid. 804(a). Here, the Government attempts to gloss over this requirement by casually stating in a footnote that it anticipates Manzo will assert his Fifth Amendment privilege against self-incrimination if subpoenaed to testify, and is accordingly unavailable. (Memorandum of Law in Support of the Government's Motion in Limine to Admit Certain Evidence at Trial, dated December 14, 2011 ("Gov't Memo." Herein), at 12.)

While the Government is correct that the Court may exempt Manzo from testifying if Manzo chooses to exercise that privilege under Fed.R.Evid. 804(a)(1), the law at a minimum requires actual confirmation from the Government that Manzo has indeed elected to exercise his Fifth Amendment to qualify as an unavailable witness. *See, e.g.*, *U.S. v. Londono*, 2001 WL 883079 (S.D.N.Y. August 3, 2001) (Court finds that two declarants are unavailable under 804(a)(1) because they have raised valid claims of Fifth Amendment privilege, but footnotes that this ruling "is contingent upon confirmation from the Government that the declarants have elected to exercise their privilege").

As far as we know, the Government has not taken any steps at all to verify that Manzo will exercise his Fifth Amendment privilege if subpoenaed to testify. Therefore, the Government has failed to meet its burden to show that Manzo is indeed unavailable as

2

a witness. The Government should not be permitted to simply guess at to Manzo's unavailability and benefit from such a guess. Moreover, the Fifth Amendment right against self-incrimination is an individual right that belongs to Manzo and not the Government. We ask the Court to require the Government to bring Manzo to Court so that he may assert *his* privilege against self-incrimination.

Manzo's statements should not be admitted under Rule 804(b)(3).

II

The Consensual Recordings and Testimony Are Not Admissible as Co-Conspirator Statements under Federal Rule of Evidence 801(d)(2)(E).

A. *The consensual recordings and testimony should not be admitted as co-conspirator statements because the government has failed to demonstrate that the statements in question will be adequately corroborated at trial.*

The Government also claims that Manzo's statements are admissible as co-conspirator statements under Fed.R.Evid. 801(d)(2)(E). "However, even in the context of organized crime, there is a limit to the proper use of Rule 801(d)(2)(E) to admit co-conspirator testimony." *United States v. Gigante*, 166 F.3d 75, 82-83 (2d Cir. 1999). Such hearsay statements are "presumptively unreliable, and for [them] to be admissible, there must be some independent corroborating evidence of the defendant's participation in the conspiracy". *Id*. And, "when a RICO conspiracy is charged, the defendant must be linked to an individual predicate act by more than hearsay alone before a statement related to that act is admissible against the defendant under Rule 801(d)(2)(E)". *Gigante*, 166 F.3d at 82-83.

Here, the Government charged the Cutolo murder conspiracy and murder as a predicate act. The Government has also made clear that it intends to use Manzo's

3

statements as proof that, among other things, the defendants Gioeli and Saracino committed the charged Cutolo murder. Gov't Memo. 1.

The Government cannot and should not be permitted to prove an entire racketeering act by hearsay alone. However, according to its memorandum of law, this is precisely what the Government seeks to do. The Government relies almost entirely on the content of Manzo's statements themselves to argue for their admission, and has notably failed to identify its independent corroborating evidence of Gioeli and Saracino's alleged participation in that murder.

Indeed, the only mention of corroboration occurs on page 11 where the Government claims that this evidence is "corroborative of the expected testimony of other cooperating witnesses' testimony regarding Manzo's role in the Cutolo murder." However, Manzo is not on trial here. The defendants, Gioeli and Saracino, are the ones who stand accused of this crime. Accordingly, the fact that Manzo's statements about his own participation in this murder will be corroborated by others at trial does not render those statements admissible in this trial. The Government must instead show that the defendants, Saracino and Gioeli, will be linked to the Cutolo murder by other non-hearsay evidence.

For example, in *United States v. Tellier*, the Second Circuit reversed a defendant's RICO conviction because the lower court erroneously admitted certain hearsay statements as co-conspirator statements. *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996). The RICO Count against Tellier alleged two racketeering acts, one of which was a conspiracy to distribute stolen marijuana. *Id*. at 580. The only evidence offered by the Government to prove Tellier's participation in that conspiracy was trial testimony

4

regarding what Tellier's brother had told one of the Government's witnesses. *Id*. This testimony was admitted under Rule 801(d)(2)(E) at trial, but the Second Circuit found that the hearsay statement alone was insufficient to convict on the marijuana conspiracy charge. *Id*. at 581. The Government had thus failed to prove a pattern of racketeering activity because it had only presented sufficient proof to convict on one of the two (or more) predicate acts required for a RICO conviction. *Id*. at 581-82. This result is precisely what this Court should avoid by excluding Manzo's statements to the Government's CW.

The remaining more general purposes for which the Government also seeks to introduce Manzo's statements—as proof of the activities, purpose and means of the charged enterprise, the defendant's roles in that enterprise, that the alleged predicate racketeering acts constitute a "pattern of racketeering activity"—can all be proven without the use of this inadmissible hearsay evidence. Given the nature of this indictment, where Saracino alone is charged with nine predicate racketeering acts, and the voluminous discovery involved, the Government presumably has other properly admissible evidence it plans to introduce at trial to support those allegations. The admission of Manzo's highly inflammatory statements about his involvement in the Cutolo murder is cumulative toward those ends and will unfairly prejudice the jury.

B. *The consensual recordings and testimony should not be admitted because the government has failed to show that the statements in question were made in furtherance of a conspiracy.*

To prevail, the Government must prove by a preponderance of the evidence that there was a conspiracy, that both declarant Manzo and the defendant Saracino were

5

members of that conspiracy, and that the statements were made during and in furtherance of the conspiracy. *Tellier*, 83 F.3d at 580 (2d Cir. 1996)(citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)). Statements are "in furtherance of a conspiracy" when they "prompt the listener ... to respond in a way that promotes or facilitates the carrying out of a criminal activity." *United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001) (internal quotation marks omitted). "The statements need not be commands, but are admissible if they provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." *Id*. (internal quotation marks omitted).

"[S]tatements relating past events meet the in-furtherance test if they serve some current purpose in the conspiracy." *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994). A statement must be more than 'a merely narrative' description by one co-conspirator of the acts of another" to further a given conspiracy. *Desena*, 260 F.3d at 158; *see also Thai*, 29 F.3d 813 (noting that "statements that are merely 'idle chatter' or that are 'entirely retrospective' are not in furtherance of the conspiracy").

Here, the Government argues that Manzo's statements were made in furtherance of the Colombo crime family enterprise because, in the Government's view, Manzo made those statements "to apprise the CW and DiMatteo of the status of the conspiracy, namely, the likelihood of his continued participation in light of the risk of imprisonment". Govt. Memo. 14. However, this argument ignores the fact that, in his quest to pry information on the charged murder, the CW made substantial and repeated efforts to isolate Manzo from the other members of the conspiracy, and to provide Manzo with the sense that he had a friend in CW to confide in unrelated to the conspiracy. Indeed, during

6

a portion of their December 8, 2011 conversation that the Government omitted in its draft transcript, the CW goes so far as to tell Manzo:

> "I am so fuckin' I am worried about you. I am worried about you. I am worried about you. Them guys there, Luca (DiMatteo), Ralphie (Lombardo), you ain't seeing them. … Listen to me if you were dying of thirst right now, they wouldn't piss in your mouth to give you a drink of water. He ain't gonna never come out of his house that guy. Forget about it so Don't worry about it. Don't worry about it. I do what I can."

Draft Transcript of Excerpt from Recording dated December 8, 2011, attached hereto as "Exhibit A", at 2.

It is equally likely, if not more so, that Manzo was simply seeking help from a friend. The conversations made clear that the CW and Manzo have a long-standing personal relationship unrelated to any conspiracy. What is more, the CW gave Manzo ample reason to think he had different, more altruistic motives for why he personally sought this information. During one meeting, the CW told Manzo that he would take what Manzo told him to his own lawyer to secure free legal advice for Manzo. Manzo responded by providing additional details for the CW to bring to his attorney. CW then followed up with Manzo about what the lawyer advised the next time they met. The CW also assured Manzo during their December 8, 2011 meeting that if he got arrested, he would send his own lawyer to make sure Manzo had help because in the CW's view no one else would help Manzo. As such, the CW gave Manzo the impression that, far from worrying about Manzo's continued participation in the alleged conspiracy, the CW was personally vested in Manzo's legal predicament because the two men cared for one another.

7

Accordingly, even though alleged Acting Captain Luca DiMatteo, in addition to the CW, pressed Manzo for information, it is not clear that Manzo made the statements in question to further the alleged conspiracy. After all, Manzo had many meeting with the CW and only met with DiMatteo once while the CW was also present. Indeed, Manzo says very little during his conversation with DiMatteo. Most of the substantive information comes directly from the CW himself. The only thing Manzo appears to acknowledge is that he was involved as a driver. He does not implicate Saracino, nor does he respond when the CW mentions "Dino" and "Joey Caves". So, even if Manzo's statements to DiMatteo, as opposed to his statements to the CW, were admissible, those statements would not be relevant at this trial.

Accordingly, Manzo's statements are not admissible under Fed.R.Evid. 801(d)(2)(E).

### III

<u>Manzo's out-of-court statements are demonstrably unreliable and should be excluded to prevent unfair prejudice to Saracino.</u>

Manzo's out-of-court statements were generated over the course of five meetings (that we are presently aware of) with the Government's confidential informant during which this informant not only pressured Manzo to provide information about a murder that took place over a decade ago, but planted certain names, including Saracino's, into the conversation in a systematic effort to suggest to Manzo that perhaps Saracino and others were implicating Manzo in the Cutolo murder and that Manzo should produce a story of his own.

According to the draft transcripts provided by the Government, right from the first meeting on November 18, 2011, the informant insists:

> "Well, you could bet your life that somebody said something. You could bet your life that somebody said something. Now, how much trouble could you wind up with?" . . . "You do have something to worry about right because apparently they told him something." . . . "You gotta worry if there's DNA there. You gotta worry about stuff. You gotta worry about stuff, you know, if they got any fuckin' DNA there. Do they have your DNA?"

*See* Exhibit A, attached to Gov't Memo. at 3-5.

When Manzo does not at first name anyone specifically, the informant throws out some names of his own:

> "Do you think Dino told them?" . . . "I don't know what Joey Caves is doing. How about Joey Caves?"

*Id*. at 3.

This pattern repeats in later conversations.

The informant also arranges a meeting between Manzo and Luca DiMatteo, an alleged acting captain in the Colombo family and tells Manzo that Manzo will now report to DiMatteo instead of Ralph Lombardo, who Manzo reported to previously. The two men then continue to press Manzo about Dino and Joey Caves and the Cutolo murder.

Although Manzo provides the informant with some information on the alleged murder, he often expresses uncertainty and presents a version of events plagued with inconsistency. He tells the Government's informant a number of times that he is not sure whose house he went to in order to pick up the body. He also fails to remember who called him to ask him to come to the house. Further, over the course of four conversations, Manzo places Tommy and others in different locations at different times

9

in ways that are inconsistent with one another. Accordingly, it is evident that Manzo either does not accurately remember what happened and who was involved or is fabricating a story to appease the informant and his new boss DiMatteo and cannot keep his facts straight.

If Manzo's statements are admitted without putting Manzo on the stand, the defense will not have an opportunity to cross-examine him on these matters, and the jury will be presented with a conflicted, misleading and potentially untruthful account of events, the credibility of which they will be absolutely barred from evaluating. Regardless, once the statements are admitted, it will be impossible for the jury to ignore the substance of those statements, namely, that Saracino and Gioeli were implicated in the charged Cutolo murder, and will most likely convict based entirely on this inadmissible hearsay. The probative value of this hearsay evidence is thus substantially outweighed by the danger of unfair prejudice to Saracino. Fed.R.Evid. 403. The evidence should be excluded.

## CONCLUSION

For the foregoing reasons, the consensual recordings of and testimony about Manzo's statements should be excluded in their entirety.

Dated: January 9, 2012
      Bronx, New York

                                    Respectfully submitted,


                                    _____/s/_____
                                    SAM BRAVERMAN
                                    LOUIS FASULO
                                    GÖNÜL AKSOY (Of Counsel)
                                    Law Office of Sam Braverman
                                    901 Sheridan Avenue
                                    Bronx, New York 10451
                                    Tel: (718) 293 1977